*1007 "These actions, initially filed by plaintiff seeking review pursuant to 50 U.S.C. App. § 1218 (Supp. V, 1975) of two 'Determinations of Excessive Profits’ by the Renegotiation Board, are now before the court on defendant’s uncontested Motion for Judgment in Aid of Execution of the Renegotiation Board orders of September 19, 1973. These orders concerned the fiscal year ending June 30, 1968, and were issued for two now defunct companies, to which plaintiff became successor in interest by a corporate merger on July 1, 1968. The profits which were determined to be excessive totaled $125,000.00 in case number 468-73 and $150,000.00 in case number 469-73. After deductions were made for various state and federal tax credits these sums were reduced to $60,801.37 and $64,378.48, respectively.
"Although plaintiff initiated the action in this court, it neither paid the amount in question to the Government nor posted bond as required by Rule 26. Defendant, noting these facts, has counterclaimed for the entire amount[1] pursuant to 28 U.S.C. § 1503, § 2508 (1970) and 50 U.S.C. App. § 1215(b)(3)(1970). Because we believe plaintiffs failure to comply with proper procedures to be without justification, we grant defendant’s motion.
"Plaintiff sought to excuse its failure to comply with these statutory requirements by alleging that it had consistently sustained net losses, that it was employing all of its capital in an attempt to 'sustain a financially competent enterprise,’ and that any 'attempt to post a bond in the amount generally called for in Rule 26 will be detrimental to the financial efficacy of the plaintiff and may well severely thwart its ability to exercise its statutory right to litigate its claim in this case. See Sandnes’ Sons, Inc. v. United States, 199 Ct.Cl. 107, 462 F.2d 1388 (1972).’
"These allegations were contained in an answer filed on March 18, 1974. On July 15, 1977, more than three years later, the defendant filed its Motion for Judgment in Aid of Execution which is currently before us. During this extended period of time, plaintiff has done nothing to prosecute its claim and has still neither paid the assessments nor posted bond. Plaintiff has, however, in the *1008 interim, 'sold (i.e., contracted to sell) its property, assets and business. for $1,150,000.’ Defendant has submitted exhibits indicating that plaintiff is no longer in business and that plaintiff received, in December 1976, 'a bank check for $610,000, a promissory note for $200,000, and an additional bank check of $340,002 (less the aggregate sum of accounts payable and accrued liabilities, but plus the sum of any prepaid expenses). Defendant asserts that this clear availability of liquid assets, sufficient either to pay the assessment or post bond, renders the Sandnes’ Sons pre-judgment hearing doctrine inapplicable in the present case. We agree.
"Although Sandnes’ Sons, supra, remains a strong statement of this court’s unwillingness to grant a judgment in aid of execution where such a judgment may deny due process by threatening such harm to a contractor that he would be effectively 'chilled’ in his pursuit of a fair redetermination, we are not now faced with such a situation. The removal of cash from the pocket of the complaining contractor,[2] when such cash is as available as it has been demonstrated to be in the case at hand, does not represent injury sufficient to 'chill’ the contractor’s further appeal to this court. Indeed, it was just such a detriment to the contractor which Congress envisioned to be necessary to prevent frivolous redetermination suits and to protect the pecuniary interests of the Government while such redetermination was underway. See, e.g., Manufacturers Service Company, Inc. v. United States, 207 Ct.Cl. 185, 193, 518 F.2d 1202, 1206 (1975).
"In any event, from the uncontradicted facts now before us, it appears that plaintiff initiated these suits, was ■ subject to a compulsory, see Solitron Devices, Inc. v. United States, 210 Ct.Cl. 352, 357, 537 F.2d 417, 420 (1976) counterclaim by defendant, and thereafter acquired cash sufficient to satisfy either the excessive profits assessment or the Rule 26 bond. Plaintiffs obvious failure to comply with Rule 26, along with the defendant’s three-year delay *1009 in seeking this judgment — which would indicate that defendant is making no affirmative attempt to "chill” plaintiffs efforts — renders judgment in aid of execution appropriate in this case.
"It Is Hereby Ordered, upon consideration of the petitions and answers, defendant’s unopposed motion, and the exhibits submitted therewith, without oral argument, that defendant’s motion is granted, and judgment in aid of execution is entered for defendant in the amount of $60,801.37 in case number 468-73 and $64,378.48 in case number 469-73, with each of these amounts to be increased by interest as allowed by law. 50 U.S.C. App. § 1215 (b)(2)(Supp. V, 1975).”

 Defendant’s counterclaims totalled $275,000, plus any additional excessive profits as determined by this court, plus interest as provided by law.

 Plaintiffs receipt of at least $610,000 would have put in its pocket sufficient cash to pay the $60,801.37 assessed by the Government in 468-73, plus the $64,378.48 assessed in 469-73, or to post the 100% bond required by Rule 26 if it desired seriously to pursue its redetermination claim.